1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EDWIN GOLDEN,

11            Plaintiff,                    No. CIV S-08-0356 GEB DAD P

12       vs.

13   S. FEUDNER, et al.,

14            Defendants.          FINDINGS AND RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendant Feudner pursuant to Rule 56 of the Federal Rules of

19   Civil Procedure.  Plaintiff has filed an opposition to the motion, and defendant has filed a reply.

20                              **BACKGROUND**

21            Plaintiff is proceeding on his original complaint against defendant Feudner.  He

22   alleges as follows.  On June 15, 2007, the defendant approached him on the yard and asked him

23   whether he had previously been told to leave the area.  Plaintiff responded that he had not

24   received such instructions and commented that the area was not out of bounds.  Without warning,

25   defendant Feudner kicked plaintiff's property and told him to leave the area.  Plaintiff sought to

26   inform the facility sergeant about the incident, but defendant Feudner refused to call a sergeant.

1

1   (Compl. at 5.)

2      On June 16, 2007, plaintiff handed defendant Feudner an inmate appeal in which

3   plaintiff made an allegation of staff misconduct based upon defendant's kicking of his property,

4   but defendant Feudner never responded to it.  Instead, defendant Feudner began retaliating

5   against plaintiff with unwarranted dorm searches and frivolous rules violation reports.  For

6   example, on June 22, 2007, defendant Feudner noticed plaintiff standing near a bench marked for

7   inmate use and asked him how many times he had told plaintiff to stay out of the area.  When

8   plaintiff responded by saying that the area was not out of bounds, defendant Feudner said that he

9   would deal with plaintiff on Monday.  On Monday, June 25, 2007, defendant Feudner conducted

10  a three-hour dorm search causing destruction of plaintiff's fellow inmates' property and told the

11  other inmates that plaintiff was the cause of the search and that they needed to deal with him.  On

12  June 26, 2007, plaintiff received a rules violation report for disobeying a direct order.  According

13  to plaintiff, there was no merit to that charge.  Rather, defendant Feudner issued it as a direct

14  result of plaintiff's filing of an inmate appeal against him.  (Compl. at 3-5 & Attachs.)

15       **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

16     Summary judgment is appropriate when it is demonstrated that there exists "no

17  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

18  matter of law."  Fed. R. Civ. P. 56(c).

19       Under summary judgment practice, the moving party
         always bears the initial responsibility of informing the district court

20       of the basis for its motion, and identifying those portions of "the
         pleadings, depositions, answers to interrogatories, and admissions

21       on file, together with the affidavits, if any," which it believes
         demonstrate the absence of a genuine issue of material fact.

22

23  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

24  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

25  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

26  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

1    after adequate time for discovery and upon motion, against a party who fails to make a showing

2    sufficient to establish the existence of an element essential to that party's case, and on which that

3    party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

4    concerning an essential element of the nonmoving party's case necessarily renders all other facts

5    immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

6    whatever is before the district court demonstrates that the standard for entry of summary

7    judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

8            If the moving party meets its initial responsibility, the burden then shifts to the

9    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

10   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

11   establish the existence of this factual dispute, the opposing party may not rely upon the

12   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

13   form of affidavits, and/or admissible discovery material, in support of its contention that the

14   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

15   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

16   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

17   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

18   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

19   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

20   1436 (9th Cir. 1987).

21           In the endeavor to establish the existence of a factual dispute, the opposing party

22   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

23   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

25   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

26   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

1    committee's note on 1963 amendments).

2              In resolving the summary judgment motion, the court examines the pleadings,

3    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

4    any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

5    477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

6    court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

7    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

8    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

9    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

10   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

11   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

12   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

13   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

14                        **OTHER APPLICABLE LEGAL STANDARDS**

15   I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

16              The Civil Rights Act under which this action was filed provides as follows:

17              Every person who, under color of [state law] . . . subjects, or causes
                to be subjected, any citizen of the United States . . . to the
18              deprivation of any rights, privileges, or immunities secured by the
                Constitution . . . shall be liable to the party injured in an action at
19              law, suit in equity, or other proper proceeding for redress.

20   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

21   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

22   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

23   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

24   meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

25   omits to perform an act which he is legally required to do that causes the deprivation of which

26   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

                                                  4

1    Moreover, supervisory personnel are generally not liable under § 1983 for the

2    actions of their employees under a theory of respondeat superior and, therefore, when a named

3    defendant holds a supervisorial position, the causal link between him and the claimed

4    constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

5    (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

6    allegations concerning the involvement of official personnel in civil rights violations are not

7    sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

8    II.  First Amendment Retaliation

9    Under the First Amendment, prisoners have a constitutional right to file prison

10   grievances and pursue civil rights litigation in the courts.  See Rhodes v. Robinson, 408 F.3d

11   559, 567 (9th Cir. 2005).  Prison officials may not retaliate against prisoners for doing so.  See id.

12   at 568.  In this regard, the Ninth Circuit has explained:

13       Within the prison context, a viable claim of First Amendment
         retaliation entails five basic elements: (1) An assertion that a state
14       actor took some adverse action against an inmate (2) because of (3)
         that prisoner's protected conduct, and that such action (4) chilled
15       the inmate's exercise of his First Amendment rights, and (5) the
         action did not reasonably advance a legitimate correctional goal.
16

17   Id. at 567-68.

18              **DEFENDANT FEUDNER'S MOTION FOR SUMMARY JUDGMENT**

19   I.  Defendant's Statement of Undisputed Facts and Evidence

20   Defendant Feudner's statement of undisputed facts is supported by citations to his

21   own declaration signed under penalty of perjury.  It is also supported by citations to plaintiff's

22   deposition transcript, plaintiff's complaint, copies of plaintiff's inmate appeals and prison

23   officials responses thereto, and a copy of a rules violation report for disobeying a direct order

24   issued to plaintiff.

25   The evidence submitted to the court by the defendant establishes the following.

26   Around June 2007, staff at CSP-Solano had been experiencing problems with inmates lingering

5

1  in the education and medical annex area.  Inmates were blocking entrances, harassing female

2  staff, and making it difficult for female staff to pass through the area.  Sometimes the inmates

3  would also occupy a bench that needed to remain available for use by physically-impaired

4  inmates awaiting entry into the medical annex.  To preserve institutional order and discipline, to

5  ensure the safety of female staff, and to ensure the bench in the annex area remained available for

6  use by physically-impaired inmates, inmates not awaiting entry into the education and medical

7  annex were generally not allowed to remain in that area.  (Def.'s SUDF 1-6, Feudner Decl.)

8       On June 15, 2007, correctional staff advised defendant Feudner that plaintiff had

9  refused to leave the education and medical annex area even after being told that he was not

10 allowed to remain there.  Defendant Feudner approached plaintiff while he was in the area and

11 ordered him to leave.  Inmates must promptly and courteously obey all verbal and written orders

12 from departmental staff.  Instead of immediately leaving the area, however, plaintiff argued with

13 defendant Feudner and stated that the area was not out of bounds.  The defendant ordered

14 plaintiff to leave the area again, and plaintiff ultimately left.  The following day, plaintiff handed

15 defendant Feudner an inmate appeal and accused him of misconduct during their encounter the

16 previous day.  (Def.'s SUDF 7-11, Feudner Decl., Pl.'s Dep.)

17      On June 22, 2007, defendant Feudner saw plaintiff working out in the education

18 and medical annex area.  He approached plaintiff and stated "how many times have I told you to

19 stay out of this area?"  Rather than immediately leaving the area, plaintiff argued with defendant

20 Feudner again and told him that the area was not out of bounds.  Plaintiff was still in the area

21 when correctional officers Clark and Holiday arrived.  Those officers asked plaintiff how many

22 times he had been told not to work out in the area.  Rather than immediately leave, plaintiff told

23 them that the area was not marked out of bounds.  Again, they instructed him to leave the area.

24 (Def.'s SUDF 12-17, Feudner Decl., Torres Decl. Ex. B, Pl.'s Dep., Compl. & Attachs.)

25      On June 25, 2007, defendant Feudner conducted a search of plaintiff's dorm

26 because of suspicions that another inmate, a known drug trafficker, had drugs.  Defendant

6

1   Feudner's search was not motivated by plaintiff's inmate appeal.  In fact, he did not search

2   plaintiff's property or tell other inmates in the dorm that plaintiff was the cause of the search.

3   Since the search took place, plaintiff acknowledges that he has not experienced any problems

4   with other inmates in the dorm.  (Def.'s SUDF 18-22, Feudner Decl., Pl.'s Dep.)

5          On June 26, 2007, defendant Feudner submitted a report summarizing his

6   interactions with plaintiff.  He did not prepare the report because of plaintiff's filing of an inmate

7   appeal.  Rather, he prepared the report because he believed that plaintiff's conduct threatened

8   institutional safety and security, impeded institutional order and discipline, potentially blocked

9   the access of physically-impaired inmates, and posed a threat to the safety of female staff.  Based

10  on the report, plaintiff received a rules violation report for disobeying a direct order.  (Def.'s

11  SUDF 23-26, Feudner Decl., Torres Decl. Ex. A, Pl.'s Dep., Compl.)

12         At all relevant tines, defendant Feudner was motivated by institutional safety,

13  security, and accessibility concerns.  Defendant Feudner did not take any action against plaintiff

14  because plaintiff had filed an inmate appeal.  Plaintiff appears to acknowledge that defendant

15  Feudner's actions have not affected his willingness to submit file an inmate appeal or a lawsuit in

16  this court.  Plaintiff also appears to acknowledge that he suffered no injury as a result of

17  defendant Feudner's conduct.  (Def.'s SUDF 29-32, Feudner Decl., Pl.'s Dep.)

18  II.  Defendant Feudner's Arguments

19         Defense counsel argues that defendant Feudner is entitled to summary judgment

20  in his favor on the merits of plaintiff's retaliation claim because he was not substantially

21  motivated by plaintiff's filing of an inmate appeal when he issued his prison disciplinary report

22  and searched plaintiff's dorm.  Defense counsel contends that defendant Feudner issued the

23  report because of plaintiff's refusal to comply with his orders and because plaintiff's presence in

24  the education and medical annex area threatened institutional safety and security, impeded

25  institutional order and discipline, and potentially blocked the access of physically-impaired

26  inmates.  In addition, defense counsel contends that defendant Feudner conducted the dorm

1  search because of suspicions that another inmate had drugs.  In this regard, defense counsel

2  maintains that defendant Feudner's actions advanced legitimate penological goals.  Finally,

3  defense counsel contends that it is undisputed that neither defendant Feudner's disciplinary

4  report filed against plaintiff nor his search of plaintiff's dorm chilled plaintiff's speech or

5  affected his willingness to file an inmate appeal or this lawsuit.  (Def.'s Mem. of P. & A. at 5-8.)

6       Defense counsel also argues that plaintiff lacks standing to maintain this cause of

7  action because he did not suffer an injury as a result of defendant Feudner's alleged conduct.  For

8  the same reason, defense counsel contends that plaintiff is not entitled to compensatory damages.

9  Finally, counsel argues that defendant Feudner is entitled to qualified immunity because he did

10 not violate any constitutional rights, and he acted reasonably.  (Def.'s Mem. of P. & A. at 8-11.)

11 III.  Plaintiff's Opposition

12       Plaintiff's opposition is supported by his own declaration signed under penalty of

13 perjury and a declaration by his fellow inmate, Ricky Penaloza.  Therein, plaintiff argues that

14 defendant Feudner issued his prison disciplinary report and searched his dorm in retaliation for

15 plaintiff's filing of an inmate appeal.  In plaintiff's view, his presence in the education and

16 medical annex area did not pose a threat to institutional safety or security.  Moreover, plaintiff

17 notes that defendant Feudner issued his prison disciplinary report and conducted the search of his

18 dorm only after plaintiff had filed his inmate appeal.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. at

19 5-8.)

20       Plaintiff also contends that he has standing to maintain this cause of action and is

21 entitled to damages if he prevails because he did in fact suffer adverse action when defendant

22 Feudner told his fellow inmates that he was the cause of the dorm search.  Finally, plaintiff

23 argues that defendant Feudner is not entitled to qualified immunity because clearly established

24 law placed him on notice that submitting a false disciplinary report about him and conducting a

25 search of his dorm in retaliation for his filing of an inmate appeal was unconstitutional.  (Pl.'s

26 Opp'n to Def.'s Mot. for Summ. J. at 9-12.)

IV.  Defendant Feudner's Reply

        In reply, defense counsel argues that the court should disregard plaintiff's opposition because it is procedurally deficient, unsupported by admissible evidence, and does not comply with the Local Rules of this court.  In addition, defense counsel reiterates that defendant Feudner's actions were not substantially motivated by plaintiff's filing of an inmate appeal, served legitimate penological purposes, and did not chill plaintiff's speech.  Counsel also reiterates the arguments that plaintiff lacks standing and is not entitled to compensatory damages because he suffered no injury as a result of defendant Feudner's alleged conduct and that defendant Feudner is entitled to qualified immunity.  (Def.'s Reply at 2-11.)

**ANALYSIS**

I.  Standing and Injury

        Article III of the United States Constitution limits the federal courts to deciding "cases" and "controversies."  To ensure that any matter presented to a federal court meets the "cases" and "controversies" requirement, the court considers the doctrines of standing, ripeness, and mootness.  Poe v. Ullman, 367 U.S. 497, 502-05 (1961).  Standing requires a court to determine whether a specific person is the proper party to invoke the power of a federal court.  Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1157 (9th Cir. 2002).  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  To establish standing, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).  The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'"  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations omitted).

/////

1         In this case, plaintiff claims that defendant Feudner retaliated against him in part

2    by submitting a frivolous rules violation report about his alleged misconduct.  The parties do not

3    dispute that, on June 26, 2007, defendant Feudner submitted a rules violation report,

4    summarizing his interactions with plaintiff and detailing how plaintiff allegedly failed to obey his

5    direct orders.  The parties also do not dispute that plaintiff was found guilty of "Disobeying a

6    Direct Order."  The record before the court shows that as a result of the disciplinary charge,

7    plaintiff forfeited thirty days of night yard, day yard, telephone, and canteen privileges from July

8    3, 2007, through August 3, 2007.  (Compl. Attach. & Torres Decl. Ex. A.)  If, as plaintiff alleges,

9    he received the rules violation report because defendant Feudner acted in improper retaliation,

10   plaintiff has suffered a personal injury traceable to the defendant's alleged unlawful conduct and

11   would be entitled to monetary damages if he prevails at trial.

12   II.  <u>Plaintiff's Retaliation Claim</u>

13        The undersigned finds that defendant Feudner has borne his initial responsibility

14   of demonstrating that no reasonable juror could conclude that he retaliated against plaintiff in

15   violation of the First Amendment.  Specifically, the evidence presented by defendant Feudner

16   establishes that he submitted a disciplinary report summarizing his interactions with plaintiff in

17   the education and medical annex area because he believed that plaintiff's conduct threatened

18   institutional safety and security, impeded institutional order and discipline, potentially blocked

19   the access of physically-impaired inmates, and posed a threat to the safety of female staff.

20   Defendant Feudner did not prepare the report because of plaintiff's filing of an inmate appeal.

21   The evidence presented by defendant Feudner also establishes that he conducted a search of

22   plaintiff's dorm because of suspicions that another inmate, a known drug trafficker, had drugs.

23   He did not search plaintiff's property or tell other inmates in the dorm that plaintiff was the cause

24   of the search.  Nor did defendant Feudner conduct the search because of plaintiff's filing of an

25   inmate appeal.  Finally, defendant Feudner's evidence establishes that plaintiff himself

26   acknowledges that the defendant's actions have not affected his willingness to file an inmate

1    appeal or a lawsuit in this court.  (Pl.'s Dep. at 26.)  Given this evidence, the burden shifts to

2    plaintiff to establish the existence of a genuine issue of material fact with respect to his

3    retaliation claim.

4            The undersigned finds that plaintiff has submitted sufficient evidence establishing

5    a legitimate dispute as to a genuine issue of material fact in support of his retaliation claim.  First,

6    as to the adverse action component of plaintiff's retaliation claim, it is undisputed that defendant

7    Feudner approached and ordered plaintiff to leave the education and medical annex area on two

8    separate occasions.  According to defendant Feudner, plaintiff refused to comply with his orders

9    on both occasions.  (Feudner Decl. at 2-3.)  After their first encounter, plaintiff filed an inmate

10   appeal alleging staff misconduct by defendant Feudner.  According to plaintiff, after their second

11   encounter, defendant Feudner told plaintiff "I'll see you Monday."  On the following Monday,

12   defendant Feudner conducted a search of plaintiff's dorm and told his fellow inmates that they

13   needed to deal with plaintiff.  Defendant Feudner also issued a disciplinary report at that time

14   against plaintiff summarizing his interactions with him and resulting in plaintiff's loss of night

15   yard, day yard, telephone, and canteen privileges.  (Compl. Attachs., Pl.'s Dep. at 13, 16, 20,

16   Pl.'s Decl. & Torres Decl. Exs. A & B.)

17            Viewing the facts in the light most favorable to plaintiff, defendant Feudner's

18   search of plaintiff's dorm, the alleged statements he made during the execution of that search,

19   and his submission of a disciplinary report against plaintiff constitute adverse actions.  See, e.g.,

20   Valandingham v. Bojorquez, 866 F.2d 1135, 1137-38 (9th Cir. 1989) (allegations that defendants

21   labeled plaintiff a "snitch" in front of other prisoners thereby subjecting him to inmate retribution

22   supported a retaliation claim under § 1983).  In addition, defendant Feudner's statement "I'll see

23   you Monday" could be construed as a threat of adverse action.  See Brodheim v. Cry, 584 F.3d

24   1262 (9th Cir. 2009).  In Brodheim, the Ninth Circuit explained that "the mere threat of harm can

25   be an adverse action, regardless of whether it is carried out because the threat itself can have a

26   chilling effect."  584 F.3d at 1270.  In that case the court concluded that the plaintiff did not need

1    to establish that the defendant's statement - "I'd also like to warn you to be careful what you

2    write, req[u]est on this form" - contained any specific threat of discipline.  584 F.3d at 1266.  It

3    was enough that the record contained statements by the defendant that a reasonable juror could

4    interpret as intimating that some form of punishment or adverse action would follow.  Id. at

5    1270-71 ("The power of a threat lies not in any negative actions eventually taken, but in the

6    apprehension it creates in the recipient of the threat.")  Based on the evidence before this court,

7    plaintiff has raised a genuine issue of material fact as to this element of his retaliation claim.

8            To be sure, a retaliation claim cannot rest on the logical fallacy of *post hoc, ergo*

9    *propter hoc*, literally, "after this, therefore because of this."  Huskey v. City of San Jose, 204

10   F.3d 893, 899 (9th Cir. 2000).  The plaintiff must show causation or that the defendant was

11   substantially motivated by or because of plaintiff's protected conduct.  Again, viewing the facts

12   in the light most favorable to plaintiff, plaintiff has offered evidence of causation in the form of

13   suspect timing.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) ("timing can properly be

14   considered as circumstantial evidence of retaliatory intent.").  Specifically, defendant Feudner

15   conducted the search of plaintiff's dorm and submitted his disciplinary charge against plaintiff

16   only after plaintiff filed his inmate appeal complaining about defendant Feudner's conduct.

17   Defendant Feudner did not take any similar actions after their first virtually-identical encounter

18   even though plaintiff purportedly disobeyed a direct order at that time as w ell.  Plaintiff has also

19   stated, under penalty of perjury, that defendant Feudner made several statements suggesting an

20   improper motive on his part.  As noted above, after their second encounter, the defendant

21   allegedly told plaintiff "I'll see you Monday" and conducted a search of plaintiff's dorm that

22   following Monday, telling plaintiff's fellow inmates that plaintiff liked jumping in an officer's

23   face and they needed to deal with him.  (Pl.'s Dep. at 20)  Although this evidence is by no means

24   conclusive of retaliatory motive, the timing of events combined with the statements allegedly

25   made by defendant Feudner is sufficient to raise a triable issue of fact regarding defendant

26   Feudner's motives.  See Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (statements and

1  suspect timing raised triable issue of fact regarding whether the defendants' motive behind

2  plaintiff's gang validation was retaliatory).

3            As to the fourth prong of plaintiff's retaliation claim, the court acknowledges that

4  defendant Feudner's actions may not have chilled plaintiff's exercise of his First Amendment

5  rights.  Specifically, at his deposition plaintiff testified as follows:

6            Q: So did Feudner's acts have any effect on your willingness to file
             grievances?
7
             A: Did it have any an effect?  No.
8
             Q: And did Feudner's acts have any effect on your willingness to
9            file lawsuits in court?

10           A: No.

11  (Pl.'s Dep. at 26.)

12           However, the Ninth Circuit has explained that focusing on whether a plaintiff was

13  actually chilled in the exercise of his constitutional rights is incorrect.  Brodheim, 584 F.3d 1271

14  (citing Rhodes, 408 F.3d at 568-69.).  An objective standard governs the chilling inquiry.

15  Specifically, the Ninth Circuit has held that a plaintiff does not have to show that "his speech was

16  actually inhibited or suppressed," but rather that the adverse action at issue "would chill or

17  silence a person of ordinary firmness from future First Amendment activities."  Rhodes, 408 F.3d

18  at 568-69.  The Ninth Circuit has explained that "it would be unjust to allow a defendant to

19  escape liability for a First Amendment violation merely because an unusually determined

20  plaintiff persists in his protected activity."  Rhodes, 408 F.3d at 568 (quoting Mendocino Envtl.

21  Ctr. v. Mendocino County, 192 F.3d 1283, 1300 (9th Cir. 1999)).  In the prison context in

22  particular, the Ninth Circuit has noted that the consequences of not employing an objective

23  standard would be "remarkably perverse":

24           [T]he Prison Litigation Reform Act of 1995 ("PLRA") establishes
             strict prerequisites to the filing of prisoner civil rights litigation . . .
25           .  Rejecting [a prisoner's retaliation] suit on the basis of his having
             filed administrative grievances seeking to vindicate his rights thus
26           would establish a rule dictating that, by virtue of an inmate's

1       having fulfilled the requirements necessary to pursue his cause of
action in federal court, he would be precluded from prosecuting the
2       very claim he was forced to exhaust.

3       Indeed, were we to adopt such a theory [that a prisoner's filing of a
retaliation suit precludes relief on a retaliation claim], prisoner
4       civil rights plaintiffs would be stuck in an even more vicious
Catch-22.  The only way for an inmate to obtain relief from
5       retaliatory conduct would be to file a federal lawsuit; yet as soon as
he or she does, it would become clear that he or she cannot
6       adequately state a claim for relief.

7  <u>Rhodes</u>, 408 F.3d at 569.  In this case, this court cannot say as a matter of law that a reasonable

8  person would not have been chilled in the exercise of their constitutional rights by the statements

9  allegedly made by defendant Feudner.

10       Finally, as to the fifth prong of plaintiff's retaliation claim, the court is required to

11  "afford appropriate deference and flexibility" to prison officials when evaluating proffered

12  legitimate correctional reasons for alleged retaliatory conduct.  <u>Pratt</u>, 65 F.3d at 807.  Preserving

13  institutional order, discipline, and security are legitimate penological interests that, if they

14  provide the motivation for an official act taken, will defeat a retaliation claim.  <u>See</u> <u>Barnett v.</u>

15  <u>Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985).

16  However, "prison officials may not defeat a retaliation claim on summary judgment simply by

17  articulating a general justification for a neutral process, when there is a genuine issue of material

18  fact as to whether the action was taken in retaliation for the exercise of a constitutional right."

19  <u>Bruce</u>, 351 F.3d at 1289-90.  Here, if defendant Feudner used his search of plaintiff's dorm and

20  the rules violation report as "a cover or a ruse" to retaliate against plaintiff due to the inmate

21  appeal that was filed, defendant cannot now assert that these actions served legitimate

22  correctional goals.  Based on the record in this case, the court finds there is sufficient conflicting

23  evidence to raise a triable issue of fact regarding whether defendant Feudner's actions were

24  /////

25  /////

26  /////

1   retaliatory in nature.[1]

2   III.  Qualified Immunity

3           "Government officials enjoy qualified immunity from civil damages unless their

4   conduct violates 'clearly established statutory or constitutional rights of which a reasonable

5   person would have known.'" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

6   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

7   immunity defense, the central questions for the court are (1) whether the facts alleged, taken in

8   the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

9   statutory or constitutional right and (2) whether the right at issue was "clearly established."

10   Saucier v. Katz, 533 U.S. 194, 201 (2001).

11           Although the court was once required to answer these questions in order, the

12   United States Supreme Court has recently held that "while the sequence set forth there is often

13   appropriate, it should no longer be regarded as mandatory." Pearson v. Callahan, 555 U.S. 223,

14   __, 129 S. Ct. 808, 818 (2009).  In this regard, if a court decides that plaintiff's allegations do not

15   make out a statutory or constitutional violation, "there is no necessity for further inquiries

16   concerning qualified immunity." Saucier, 533 U.S. at 201.  Likewise, if a court determines that

17   the right at issue was not clearly established at the time of the defendant's alleged misconduct,

18   the court may end further inquiries concerning qualified immunity at that point without

19   determining whether the allegations in fact make out a statutory or constitutional violation.

20   Pearson, 129 S. Ct. at 818-21.

21           As discussed above, the facts alleged taken in the light most favorable to the

22   plaintiff demonstrate that defendant Feudner's conduct violated plaintiff's rights under the First

23

24           [1] In his reply defense counsel has submitted objections to plaintiff's evidence.  Insofar as defendant's objections are relevant to the court's disposition of the pending motion as set forth above, they are overruled.  It would be an abuse of discretion to refuse to consider evidence

25   offered by a pro se plaintiff at the summary judgment stage.  See, e.g., Jones v. Blanas, 393 F.3d 918, 935 (9th Cir. 2004) (reversing and remanding with instructions to consider evidence offered

26   by the pro se plaintiff in his objections to the findings and recommendations).

1   Amendment.  Moreover, the state of the law in 2007, when the alleged constitutional violations

2   took place, would have given defendant Feudner fair warning that he could not retaliate against

3   plaintiff for his filing of an inmate appeal.  As early as 1995, "the prohibition against retaliatory

4   punishment [was] clearly established law in the Ninth Circuit for qualified immunity purposes."

5   See Pratt, 65 F.3d at 806.  Accordingly, defendant Feudner is not entitled to qualified immunity

6   and his motion for summary judgment on that basis should be denied.

7                                                    **CONCLUSION**

8              Accordingly, IT IS HEREBY RECOMMENDED that defendant Feudner's May

9   24, 2010 motion for summary judgment (Doc. No. 38) be denied.

10              These findings and recommendations are submitted to the United States District

11   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

12   one days after being served with these findings and recommendations, any party may file written

13   objections with the court and serve a copy on all parties.  Such a document should be captioned

14   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15   shall be served and filed within fourteen days after service of the objections.  The parties are

16   advised that failure to file objections within the specified time may waive the right to appeal the

17   District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18   DATED: December 22, 2010.

19

20                                                      _____

21                                                      DALE A. DROZD
                                                        UNITED STATES MAGISTRATE JUDGE

22   DAD:9
     gold0356.57(2)

23

24

25

26